[977 NYS2d 797]

Francis Moulton, Appellant, v State of New York, Respondent.

Third Department, December 26, 2013

### APPEARANCES OF COUNSEL

*Francis Moulton*, Gowanda, appellant pro se.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Arnold* of counsel), for respondent.

### OPINION OF THE COURT

Spain, J.

Claimant was sentenced in 2000 to a prison term of 3½ years upon his guilty plea to the crime of robbery in the first degree. While the sentencing court did not impose or address the mandatory postrelease supervision (hereinafter PRS) (*see* Penal Law § 70.45 [former (1)]), a five-year term of PRS was administratively added by the then-Department of Correctional Services (hereinafter DOCS)[1] upon his release in 2003. Thereafter, claimant was arrested and reincarcerated several times for violating the terms of the administratively imposed PRS and, at issue here, on April 18, 2008, he was again arrested, reportedly on a parole warrant, for violating his PRS and detained pending a parole revocation hearing. Claimant was still in custody on April 29, 2008 when the Court of Appeals issued the companion seminal state law decisions in *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358 [2008]) and

---

1. DOCS merged with the Division of Parole in 2011 to become the Department of Corrections and Community Supervision (*see* L 2011, ch 62, § 1, part C, § 1, subpart A).

*People v Sparber* (10 NY3d 457 [2008]), ruling that only a sentencing court has the authority to impose the PRS component of a defendant's sentence and that DOCS acted in excess of its jurisdiction when it administratively imposed a period of PRS. The Court made clear in *Sparber* that the "sole remedy" for this procedural error "is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required [PRS] pronouncement" (*People v Sparber*, 10 NY3d at 471). Notably, the Court of Appeals expressly declined to pass on the applicability of *Earley v Murray* (451 F3d 71 [2d Cir 2006]), in which the Second Circuit ruled that DOCS' administrative imposition of a term of PRS violated clearly established federal due process principles as articulated in United States Supreme Court precedent and was, as such, a nullity (*Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d at 363; *People v Sparber*, 10 NY3d at 471 n 5). More recently, the Second Circuit held that, as of its 2006 decision in *Earley*, it was clearly established, for purposes of qualified immunity, that administrative imposition of PRS violated federal due process guarantees (*see Vincent v Yelich*, 718 F3d 157, 167-170 [2d Cir 2013]; *see also Scott v Fischer*, 616 F3d 100, 105-107 [2d Cir 2010]). While federal law rulings of Circuit Courts of Appeals are not binding on the New York Court of Appeals, they are persuasive authority (*see People v Kin Kan*, 78 NY2d 54, 59-60 [1991]). Given that claimant here addresses federal law rulings[2] in the context of his state law claims, we will discuss them in limited fashion, recognizing that the Court of Appeals has not, to date, spoken to those federal law interpretations.

Almost two weeks after *Garner*, a parole revocation hearing was reportedly held in this matter on May 12, 2008, after which claimant's parole was revoked based upon a finding that he had violated his DOCS-imposed PRS, notwithstanding claims raised by his counsel at the hearing that the administratively imposed PRS was a nullity under *Garner*.[3] He was then sentenced to prison for the remaining 11 months of his term, where he

**2.** Specifically, claimant argued that his DOCS-imposed PRS was invalid at the outset, citing *Hill v United States ex rel. Wampler* (298 US 460, 464-465 [1936]), which is discussed in both *Earley v Murray* (451 F3d at 74-76) and *Vincent v Yelich* (718 F3d at 160, 162, 166-168). Claimant submits that *Hill* broadly held that the only valid sentence is the one imposed by the sentencing court—which is controlling as the judgment of the court and authorizes custody of a defendant—and any administrative addition thereto is void.

**3.** The parole revocation warrant and hearing transcript are not in the record on appeal. However, defendant conceded in its affidavit in support of its

remained until his release in October 2008 by order of Supreme Court, Cayuga County (Leone, J.) on a successful petition for a writ of habeas corpus. Claimant commenced this action alleging, as relevant here, false imprisonment and malicious prosecution stemming from his imprisonment between April 2008 and October 2008.[4] The gravamen of claimant's action and request for damages is *not* founded upon DOCS' administrative imposition of a period of PRS but, rather, it centers upon his incarceration after *Garner* for violating PRS, when defendant knew or should have known that DOCS-imposed PRS was invalid. The Court of Claims granted defendant's motion to dismiss for failure to state valid causes of action and denied claimant's cross motion for summary judgment. Claimant, pro se, now appeals, challenging the decision on both motions.

The Court of Claims erred in dismissing claimant's false imprisonment cause of action because his parole violation prosecution and confinement after *Garner* were not privileged; defendant is not entitled to immunity for incarcerating claimant on a parole violation premised upon an administratively-imposed PRS that was known to be a nullity under controlling law. On defendant's motion to dismiss for failure to state a cause of action, "the [claim] is liberally construed, the facts alleged [in the claim and any submission submitted in opposition to the dismissal motions] are accepted as true, [claimant is] accorded every favorable inference and the court determines only whether the facts alleged in the [claim] 'fit within any cognizable legal theory' " (*Lazic v Currier*, 69 AD3d 1213, 1213-1214 [2010], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

To establish a claim for false imprisonment, claimant needs to show that defendant intended to confine him, that he was conscious of the confinement, that he did not consent to it, and

___

motion to dismiss that claimant was arrested and incarcerated for violating DOCS-imposed PRS and that a parole revocation hearing was held May 12, 2008, after which he was found to be in violation of that PRS and sentenced to prison for the remainder of his term. Further, claimant asserted in his claim and in counsel's affidavit in support of his motion for summary judgment that he raised the issue of *Garner* at his final parole revocation hearing. Aside from a general denial in its answer, defendant has not contested that claimant timely raised *Garner*, argued that the issue is unpreserved, or submitted any evidence, such as the hearing transcript, to refute or raise a question of fact undermining claimant's contention that he timely raised this issue.

4. While claimant initially sought damages for all of his incarcerations following findings that he had violated parole, he ultimately limited his claim before the Court of Claims to the final parole violation petition and ensuing incarceration.

that "the confinement was not otherwise privileged" (*Broughton v State of New York*, 37 NY2d 451, 456 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]; *see Martinez v City of Schenectady*, 97 NY2d 78, 85 [2001]). Only the last issue—whether the confinement was privileged—is in dispute and, significantly, the burden rested on defendant to establish that the detention was privileged (*see Hollender v Trump Vil. Coop.*, 58 NY2d 420, 425 [1983]). Under settled law, an otherwise unlawful detention "is privileged where the confinement was by arrest under a valid process [warrant] issued by a court having jurisdiction" (*Collins v State of New York*, 69 AD3d 46, 51 [2009] [internal quotation marks and citation omitted]; *see Davis v City of Syracuse*, 66 NY2d 840, 842 [1985]; *Broughton v State of New York*, 37 NY2d at 457-458; *Nazario v State of New York*, 75 AD3d 715, 718 [2010], *lv denied* 15 NY3d 712 [2010]). "An arrest made extrajudicially—that is, without a warrant—is presumptively unlawful, but [t]he existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim" (*Guntlow v Barbera*, 76 AD3d 760, 762 [2010], *appeal dismissed* 15 NY3d 906 [2010] [internal quotation marks and citations omitted]). Defendant contends that claimant did not challenge the validity of the arrest warrant or the jurisdiction of the issuing court, thereby failing to preserve any issue about its privilege to detain him. We disagree.

■ To begin, claimant sufficiently alleged that his confinement was not privileged and it was defendant's burden to establish that its confinement of claimant after *Garner* was privileged; defendant failed in the Court of Claims to produce a Division of Parole arrest warrant or a court order so as to demonstrate their validity or that the arrest or confinement of claimant was privileged (*see Hollender v Trump Vil. Coop.*, 58 NY2d at 425; *Broughton v State of New York*, 37 NY2d at 457-458; *cf. Donald v State of New York*, 17 NY3d 389, 394-395 [2011]; *Standsblack v State of New York*, 79 AD3d 1242, 1243 [2010]; *Holmberg v County of Albany*, 291 AD2d 610, 612-613 [2002], *lv denied* 98 NY2d 604 [2002]).[5] Further, to clarify, claimant does not challenge his arrest prior to *Garner* but, rather, premises his claims on his continued detention and reincarceration—after *Garner*—for a parole violation based upon an administratively-imposed

---

**5.** Claimant did not concede the existence of a valid arrest warrant. Further, and contrary to defendant's contention, claimant did contest the process by which he was confined so as to preserve this issue for appeal.

PRS term that *Garner* clearly held was invalid, i.e., he raises a claim for false imprisonment and not for false arrest. Thus, even if the arrest warrant were lawful on April 18, 2008 based upon a violation of DOCS-imposed PRS (the underlying merits of which violation claimant does not contest), the validity and lawfulness of that detention evaporated in the wake of *Garner*. When claimant's post-*Garner* parole revocation hearing was held nearly two weeks after DOCS-imposed PRS was categorically declared invalid in this state, defendant did not have the "privilege" to ignore that mandate, or to find him to be in violation of any invalid PRS term or to resentence him to the remainder of his term.[6] That is, after *Garner*, claimant was held without justification.

While defendant suggests that when *Garner* was issued, the remedy was not clear for invalid DOCS-imposed PRS, we note that *Sparber* very clearly indicated that, where the sentencing court failed to pronounce a period of PRS as statutorily required, "the sole remedy" for this error was not expungement of all PRS but, rather, "to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement" (*People v Sparber*, 10 NY3d at 471; *see Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d at 363 n 4; *Vincent v Yelich*, 718 F3d at 173).[7] Here, claimant was arrested and detained on April 18, 2008, *Garner* and *Sparber* were handed down on April 29, 2008 and the revocation hearing was not held until May 12, 2008; there is no indication in this record that any effort was made by DOCS, the Division of Parole or the District Attorney to bring claimant before a court for resentencing despite his counsel's argument at the hearing that his detention on that PRS term was unlawful. Indeed, even after legislation was passed in June 2008 establishing a mechanism for judicial resentencing, defendant apparently did not take measures to have claimant lawfully resentenced by a court to PRS even as he remained incarcerated on an invalid parole revocation (*see* Correction Law § 601-d; *Collins v State of New York*, 69 AD3d at 50-51; *see also Vincent v Yelich*, 718 F3d at 174 [the "record (is) . . . unclear as to when—or whether—DOCS began to urge resentencing of

---

6. Indeed, defendant acknowledged in recent federal litigation that *Garner* and *Sparber* clarified that DOCS' imposition of PRS was unlawful (*see Vincent v Yelich*, 718 F3d at 170).

7. Under *People v Catu* (4 NY3d 242 [2005]), the failure to inform a defendant of the PRS term would also permit vacatur of a guilty plea, a remedy rejected by the Sparber defendant in *People v Sparber* (10 NY3d at 466).

prisoners whose PRS terms had been administratively imposed and who had been reimprisoned for violating those terms"]; *see e.g. Matter of State of New York v Randy M.*, 57 AD3d 1157, 1158 [2008], *lv denied* 11 NY3d 921 [2009]).

Defendant submitted no evidence, and makes no viable legal claim, that its continued imprisonment of claimant after *Garner*—on a nullified, administratively imposed period of PRS and without the required resentencing by a court—was privileged. Defendant's argument that claimant's confinement was privileged under *Donald v State of New York* (17 NY3d 389 [2011], *supra*) is unavailing. *Donald* involved a challenge to DOCS' imposition of PRS, in which the Court of Appeals ruled that DOCS' discretionary actions in imposing PRS and confining him for violating it, while ultimately determined to be mistaken by *Garner*, were privileged and rendered defendant immune from liability. The critical distinction is that the claimant in *Donald* was incarcerated on a violation of PRS administratively imposed before *Garner*, at a time when "DOCS made the 'reasoned judgment' that it should interpret . . . sentences as including PRS"[8] (*Donald v State of New York*, 17 NY3d at 395, quoting *Lauer v City of New York*, 95 NY2d 95, 99 [2000]; *see Ortiz v State of New York*, 78 AD3d 1314, 1315 [2010], *affd sub nom. Donald v State of New York*, 17 NY3d 389 [2011]; *Nazario v State of New York*, 75 AD3d at 717-718). Here, by contrast, claimant's parole revocation hearing and sentencing on a violation of administratively imposed PRS occurred almost two weeks after *Garner*, at a time when defendant knew or should have known that the PRS was a nullity and that claimant "could not validly be punished for violating the terms of [PRS] until af-

---

8. Defendant's contention that *Donald* controls here is, in part, premised upon the fact that the claimant therein remained incarcerated on the DOCS-imposed PRS after *Garner*. While it appears that he was released on May 28, 2008, after *Garner* was decided (*see Donald v State of New York*, 24 Misc 3d 329, 330-331 [2009], *revd* 73 AD3d 1465 [2010], *affd* 17 NY3d 389 [2011]), the Court of Claims recognized that he did not establish that any of that period of incarceration was directly attributable to violating the DOCS-imposed PRS, and the appellate decisions did not alter that finding (*see Donald v State of New York*, 24 Misc 3d at 342). Thus, *Donald* did not address, and cannot be read to countenance, post-*Garner* incarceration for violating DOCS-imposed PRS. Here, by comparison, claimant was both found to have violated the unlawful PRS and sentenced to prison on that violation after *Garner*. Moreover, neither the Appellate Division decision nor the Court of Appeals decision in *Donald* suggests, even indirectly, that defendant is privileged under the facts here, i.e., where a parole violation hearing and reincarceration occur after *Garner* and are based on a DOCS-imposed period of PRS that was a nullity under then-controlling law.

ter it was imposed by a court" (*Matter of State of New York v Randy M.*, 57 AD3d at 1159). Federal authority had also already held that the administratively imposed PRS was unconstitutional and invalid.

■ ■ Further, defendant does not have immunity for the actions of its parole officials. To be sure, inherently discretionary parole decisions of government officials have been recognized to be quasi-judicial decisions entitled to absolute immunity (*see Tarter v State of New York*, 68 NY2d 511, 517-518 [1986]; *Mertens v State of New York*, 73 AD3d 1376, 1377 [2010], *lv denied* 15 NY3d 706 [2010]; *Nelson v State of New York*, 67 AD3d 1142, 1143 [2009]; *see also Arteaga v State of New York*, 72 NY2d 212, 216-217 [1988]). "Where, however, the official has stepped outside the scope of his [or her] authority and acted in the clear absence of all jurisdiction or without a colorable claim of authority, there is plainly no entitlement to absolute immunity, even if the underlying acts are . . . quasi-judicial in nature" (*Della Pietra v State of New York*, 71 NY2d 792, 796 [1988] [internal quotation marks and citations omitted]). That is, "[t]here is a distinction between acts performed in excess of jurisdiction and acts performed in the clear absence of any jurisdiction over the subject matter. The former is privileged, the latter is not" (*Sassower v Finnerty*, 96 AD2d 585, 586 [1983], *appeal dismissed* 61 NY2d 756 [1984], *lv denied* 61 NY2d 985 [1984] [citation omitted]; *see Collins v State of New York*, 69 AD3d at 51-52). In *Garner*, the Court of Appeals concluded that the petitioner was entitled to a writ of prohibition because DOCS acted "in excess of [its] jurisdiction"[9] by imposing a period of PRS (*Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d at 362).

As the Court of Appeals subsequently recognized, DOCS is plainly vested with the power to make "judgments as to the scope of its own authority in interpreting the directions it has received from the court system," and that the reasoned, albeit mistaken, judgment of DOCS prior to *Garner*, based upon then-existing case law, that it was authorized to impose a mandatory period of PRS, even when the sentencing court did not pronounce a period of PRS, was privileged (*Donald v State of New York*, 17 NY3d at 395-396; *see Nazario v State of New York*, 75 AD3d at 717; *Collins v State of New York*, 69 AD3d at 52-53). Here, by distinction, after *Garner*, defendant's officials no lon-

---

**9.** Note that under CPLR 7803 (2), prohibition lies against actions "without or in excess of jurisdiction."

ger had a reasoned basis or jurisdiction to enforce DOCS-imposed PRS and, when they did so, they "stepped outside the scope of [their] authority" and "acted in the clear absence of all jurisdiction [and] without a colorable claim of authority" (*Della Pietra v State of New York*, 71 NY2d at 796 [internal quotation marks and citation omitted]); thus, defendant acted without jurisdiction over claimant when it conducted a parole revocation hearing, revoked parole and reincarcerated him, all based upon an alleged violation of a period of PRS that it knew or should have known was a nullity under the controlling rulings of *Garner* and *Sparber*, as well as under federal law (*cf. Mertens v State of New York*, 73 AD3d at 1377; *Collins v State of New York*, 69 AD3d at 51-52). Accordingly, defendant was not entitled to absolute immunity. Moreover, "the [post-*Garner*] conduct attributed to [defendant] was . . . prohibited by . . . law" and claimant's "right not to be subjected to such action was . . . clearly established [under state and federal law] at the time it was taken [after *Garner*]" (*Vincent v Yelich*, 718 F3d at 166 [internal quotation marks and citations omitted]). As "a reasonable official would understand that what he [or she was] doing violates that right" (*Anderson v Creighton*, 483 US 635, 640 [1987]), defendant has failed to establish that its actions here were supported by a "reasonable basis" under existing law (*Arteaga v State of New York*, 72 NY2d at 216; *see Della Pietra v State of New York*, 71 NY2d at 798; *Friedman v State of New York*, 67 NY2d 271, 284 [1986]) and, thus, defendant is not shielded from liability by qualified immunity.

In view of the foregoing, we find that, for the period between claimant's April 18, 2008 arrest and the *Garner* decision on April 29, 2008, defendant "was entitled to rely upon the then-existing interpretation of the law" regarding DOCS-imposed PRS (*Nazario v State of New York*, 75 AD3d at 717) and established its privilege for his detention during that period. However, defendant has not established its privilege to continue to detain claimant on a DOCS-imposed PRS violation for the period after *Garner* up until his release on a habeas corpus petition on October 2008. As claimant has, and has stated, a cause of action for false imprisonment (*see Leon v Martinez*, 84 NY2d at 87-88; *Broughton v State of New York*, 37 NY2d at 456), the Court of Claims erred in granting defendant's motion to dismiss this claim.

Furthermore, given the preceding analysis, and viewing the evidence most favorably to defendant, the nonmoving party

with respect to claimant's cross motion for summary judgment (*see Branham v Loews Orpheum Cinemas, Inc.*, 8 NY3d 931, 932 [2007]), we find that claimant demonstrated entitlement to summary judgment on his false imprisonment claim, having made a prima facie showing on the only disputed element of that cause of action, i.e., defendant's lack of privilege following *Garner* to hold a parole revocation hearing and incarcerate him on a parole violation based upon DOCS-imposed PRS (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). In response, defendant raised only meritless legal arguments and failed "to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of [this cause of] action" (*id.*). As claimant established this cause of action "sufficiently to warrant the court as a matter of law in directing judgment in [his] favor" (CPLR 3212 [b]), he is entitled to summary judgment on that claim (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

■ We similarly conclude that claimant stated a cause of action for malicious prosecution. To make out a claim for malicious prosecution, claimant must establish: "(1) the commencement or continuation of a criminal proceeding by the defendant against the [claimant], (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" (*Broughton v State of New York*, 37 NY2d at 457; *see Martinez v City of Schenectady*, 97 NY2d at 84; *Smith-Hunter v Harvey*, 95 NY2d 191, 195 [2000]). Defendant argues that the Court of Claims correctly determined that, while claimant established the first element, he failed to establish the remaining ones. On the second prong, claimant need not "demonstrate innocence" of the parole violation in order to satisfy that favorable termination prong; rather, claimant can satisfy it by showing that "there can be no further prosecution of the [alleged parole violation]" (*Smith-Hunter v Harvey*, 95 NY2d at 199, 196). We believe it self evident, under the facts here and despite the lack of state law on point,[10] that defendant could not, after *Sparber* and *Garner*, ever lawfully prosecute claimant on a parole violation that occurred before

---

10. Under the Second Circuit's 2006 interpretation of federal due process requirements and United States Supreme Court precedent, the administrative imposition of PRS was unlawful and unconstitutional (*see Earley v Murray*, 451 F3d at 74-76; *see also Vincent v Yelich*, 718 F3d at 166-168). The Court of Appeals has not yet ruled on the constitutionality of DOCS-imposed PRS or parole revocation thereof, before or after *Garner/Sparber*, as those decisions were expressly based solely on state statutes.

those decisions, where the PRS in effect at the time of the alleged violation was imposed by DOCS and was, as such, a nullity (*see Matter of State of New York v Randy M.*, 57 AD3d at 1159). Even had claimant been brought before a court for resentencing and the imposition of PRS, he could not thereafter have been found to have violated parole based on an incident that occurred *before* PRS was lawfully imposed by a court (*see id.*). Also, claimant's release on a habeas corpus petition, based on the term of his PRS being a nullity, was not "inconsistent with [his] innocence" of the parole violation and, thus, it constituted a favorable termination (*Martinez v City of Schenectady*, 97 NY2d at 84; *see Smith-Hunter v Harvey*, 95 NY2d at 196; *Keller v Butler*, 246 NY 249, 254 [1927] [habeas corpus release was termination in favor of inmate for malicious prosecution purposes]; *Casler v State of New York*, 33 AD2d 305, 309 [1970] [same]; *cf. De Cicco v Madison County*, 300 AD2d 706, 707 [2002]; *Romero v State of New York*, 294 AD2d 730, 731 [2002], *appeal dismissed* 98 NY2d 727 [2002], *lv denied* 99 NY2d 503 [2002]).

While defendant argues that claimant's release was on a mere "procedural error," relying on the analysis in *People v Sparber* (10 NY3d at 471), that assertion misapprehends the holding. What *Sparber* referred to as a "procedural error" was the sentencing court's failure to pronounce PRS and DOCS' imposition of a period of PRS, occurring before *Garner* established that DOCS could not do so, which could be remedied by a court meting out a resentence; *Sparber* did not hold that defendant's post-*Garner* conduct, as here, in holding a revocation hearing and imprisoning claimant on a parole violation was a mere "procedural error." Thus, we find that claimant satisfied the second, i.e., favorable termination, prong. As for the third prong, as we concluded with regard to the false imprisonment claim, even if probable cause existed at the time of arrest, it did not exist after *Garner* so as to authorize defendant to prosecute claimant at a parole revocation hearing on an administratively imposed period of PRS that was invalid and, according to the Second Circuit, unconstitutional as a matter of federal due process.

Finally, regarding the last prong, "[a]ctual malice is defined as with knowledge that it was false or with reckless disregard of whether it was false or not" (*Nazario v State of New York*, 75 AD3d at 717 [internal quotation marks and citation omitted]; *accord Wolston v Reader's Digest Assn., Inc.*, 443 US 157, 160

[1979]). Unlike the pre-*Garner* cases in which we recognized that DOCS was entitled to rely on then-existing case law holding that "PRS was automatically imposed by operation of law and DOCS was only enforcing that which was already there [when it administratively imposed PRS]" (*Nazario v State of New York*, 75 AD3d at 717 [and cases cited therein]), here, subsequent controlling case law—*Garner* and *Sparber*—clearly apprised defendant and its officials that such PRS was invalid and that claimant could not be held for a parole revocation hearing and imprisoned on a parole violation so based. Defendant did not need the "benefit of hindsight" (*id.*); rather, claimant has alleged that defendant had the knowledge and notice that this PRS was invalid or acted with reckless disregard of whether it was valid so as to sufficiently allege actual malice.

Accordingly, claimant's malicious prosecution claim should not have been dismissed for failure to state a cause of action (*see* CPLR 3211 [a] [7]). However, given the myriad material factual questions remaining on that claim, we agree with the Court of Claims that claimant is not entitled to summary judgment on this cause of action (*see* CPLR 3212 [b]).

ROSE, J.P., STEIN and GARRY, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted that part of defendant's motion to dismiss the false imprisonment and malicious prosecution causes of action, and (2) denied claimant's cross motion for summary judgment on the false imprisonment cause of action; defendant's motion denied to said extent, claimant's cross motion granted to said extent and summary judgment awarded to claimant on said cause of action; and, as so modified, affirmed.